IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTON |
| | : | |
| v. | : | |
| | : | |
| JOSE ANTONIO SANTIAGO | : | NO. 05-32-3 |

### MEMORANDUM AND ORDER

**Juan R. Sánchez, J.**                                                               **July 30, 2008**

Jose Santiago asks me to suppress his statements because a language barrier and his questionable mental condition made him more susceptible to police coercion, violating *Miranda*.[1] He also seeks to suppress these statements because his language barrier and mental condition rendered his waiver ineffective. The Government contends Mr. Santiago spoke with police voluntarily and he knowingly, intelligently, and voluntarily waived his *Miranda* rights. I agree.

### FINDINGS OF FACTS

1. Around 6:00 a.m. on October 11, 2004, Mr. Santiago was arrested inside the residence at 116 Center Street, Toughkenamon, Pennsylvania for allegedly conspiring to commit hostage taking and kidnaping Carlos Correa.

2. Detective Scott Whiteside, along with other local West Chester police officers and FBI officers, executed the search warrant for the 116 Center Street residence. Afterwards, Detective Whiteside drove Mr. Santiago to the West Chester police station for questioning.

3. Once at the police station, Detective Whiteside brought Mr. Santiago to the interview room. He removed Mr. Santiago's handcuffs, gave him coffee and crackers, and allowed him to watch television in the interview room. Mr. Santiago remained uncuffed throughout the interview.

4. Detective Whiteside, who has been a detective for eight years and has conducted more than 1,000 interviews, met with FBI Agent Osvaldo DeJesus to discuss interviewing Mr.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

1

Santiago. They agreed Agent DeJesus would serve as the Spanish translator for the interview. Agent DeJesus has worked for the FBI for 17 years. The FBI certified him as a native Spanish speaker. He is originally from Puerto Rico, as is Mr. Santiago. Agent DeJesus's Spanish proficiency and ability to translate from Spanish to English are conceded.

5.  Both Agent DeJesus and Detective Whiteside were dressed in plain clothes and without weapons during the interview. Detective Whiteside and Agent DeJesus read Mr. Santiago his *Miranda* rights in Spanish from a *Miranda* card. Gov.'s Ex. 33. The card lists all the *Miranda* rights and asks the question: "Do you understand this?" after every right. The interviewee is required to answer these questions and provide his/her signature. The last question presented to the interviewee is: "Understanding these rights and having them in mind, do you wish to give up these rights and talk to me now?". *Id.*

6.  On the *Miranda* card, Mr. Santiago answered "Yes," to every question including understanding the rights and wishing to waive them to talk to Detective Whiteside and Agent DeJesus. *Id.* Two minutes before starting the interview, Mr. Santiago signed this card.

7.  Agent DeJesus and Detective Whiteside tape-recorded the interview with Mr. Santiago from 10:28 a.m. until Mr. Santiago wanted to stop at 12:07 p.m. In the first few minutes of the interview, Mr. Santiago identified himself and gave his date of birth. He also recognized he had been read his *Miranda* rights and agreed to waive them.

8.  Agent DeJesus and Detective Whiteside took a short break during the interview after Mr. Santiago had given a non responsive answer to Agent DeJesus's question. Agent DeJesus was not aware of the kidnaping case's specific details, so Detective Whiteside wanted to inform him of these details before continuing the interview.

9.  When responding to some of Agent DeJesus's questions, Mr. Santiago would discuss instances he had attempted to cooperate with police regarding local non related criminal activity. Agent DeJesus asked Mr. Santiago pointed and suggestive questions about Mr. Santiago's involvement in the kidnaping. Mr. Santiago would discuss what the alleged co-conspirators did in this kidnaping, but he denied his involvement in the conspiracy to kidnap.

10. The overall tone of the interview was conversational and not hostile. Despite Agent DeJesus's pointed questions, his tone remained conversational throughout the interview. Agent DeJesus did not scream or threaten Mr. Santiago. Mr. Santiago's voice through out the interview remained calm and collected. Mr. Santiago did not sound agitated or frightened.

11. During the interview, Mr. Santiago was asked if he was comfortable and, when he stated he was cold and had a stomachache, he was given a cup of coffee and some crackers. Mr. Santiago told them he previously had surgery to his pancreas.

12.  There was nothing about Mr. Santiago's behavior, demeanor, or answers that caused either Agent DeJesus or Detective Whiteside to question Mr. Santiago's mental condition. Mr. Santiago's responses demonstrate he understood Agent DeJesus's questions. For example, when asked about the co-conspirators, Mr. Santiago knew who they were and where they lived. He also stated they had visited him in his house and discussed a kidnaping. Throughout the interview, Mr. Santiago evaded confessing to his full participation in the kidnaping conspiracy. Mr. Santiago never confessed to planning and carrying out the kidnaping, despite being told the victim would identify him as one of the kidnappers.

**DISCUSSION**

*Miranda* prohibits the use of involuntary statements derived from coercive interrogation. "A confession is involuntary if a 'defendant's will was overborne when he confessed.'" *United States v. Richardson*, 265 Fed. Appx. 52, 56 (3d Cir. 2008) (citing *Miller v. Fenton*, 796 F.2d 598, 604 (3d Cir. 1986)). The main question is whether police coercion caused the confession. *United States v. Andrews*, 231 Fed. Appx. 174, 176-77 (3d Cir. 2007) (citing *United States v. Swint*, 15 F.3d 286, 288-89 (3d Cir.1994); *United States ex rel. Hayward v. Johnson*, 508 F.2d 322, 326 (3d Cir. 1975)); *United States v. Jacobs,* 431 F.3d 99, 108 (3d Cir. 2005) (citing *Colorado v. Connelly*, 479 U.S. 157, 164 (1986)). Courts consider the totality of the circumstances such as the interrogation's length, location, and continuity, the defendant's maturity, level of education, physical condition, and his/her mental health. *United States v. Andrews*, 231 Fed. Appx. 174, 176-77 (3d Cir. 2007). A defendant's mental condition does not automatically render a statement coerced. *Richardson*, 265 Fed. Appx. at 56 (citing *Colorado v. Connelly*, 479 U.S. 157, 164 (1986)). Courts, instead, must examine whether police coercion caused a defendant of questionable mental health to involuntarily confess. *Connelly*, 479 U.S. at 163-64 (deciding confession from schizophrenic defendant was voluntary absent evidence of police coercion or exploitation of defendant's mental condition).

Individuals can forgo their *Miranda* rights with a knowing, intelligent, and voluntary waiver.

3

*Miranda*, 384 U.S. at 436. In evaluating a *Miranda* waiver, courts examine the totality of the circumstances surrounding the waiver such as the facts and circumstances surrounding the case, and the defendant's background, experience, and conduct. *United States v. Velasquez*, 885 F.2d 1076, 1086 -88 (3d Cir. 1989). The Government must show the statements complied with *Miranda* by a preponderance of the evidence. *Oregon v. Bradshaw*, 462 U.S. 1039, 1044-46 (1983).

The totality of the circumstances show Mr. Santiago gave voluntary statements during the interview. During the interview, Mr. Santiago remained uncuffed. He was given coffee, crackers, and permission to watch television and to use the restroom. Agent DeJesus and Detective Whiteside were in plain clothes and without weapons. The interview lasted for an hour and a half until Mr. Santiago stated he wanted to end it. Agent DeJesus spoke with Mr. Santiago in a conversational tone. Neither Agent DeJesus nor Detective Whiteside screamed or threatened Mr. Santiago. Even when Mr. Santiago gave non-responsive or non-cooperating answers, Agent DeJesus's tone remained conversational and non-hostile. Similarly, Mr. Santiago's was calm and collected in his responses to Agent DeJesus. In his responses, Mr. Santiago's voice did not sound agitated or frightened. Nothing in this interview supports Mr. Santiago's contention his statements were coerced. Mr. Santiago's statements were "the product of a free and deliberate choice rather than intimidation, coercion or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

Mr. Santiago argues his statements were involuntary because his mental health[2] made him

---

[2] Mr. Santiago underwent three mental evaluations in 2005 and 2006. The first evaluation, conducted in mid 2005, found Mr. Santiago did not have a mental illness and was competent to stand trial. It also concluded he was malingering. The second evaluation stated Mr. Santiago was not malingering and was not competent to stand trial. The third evaluation found he was competent to stand trial. None of the evaluations considered Mr. Santiago's mental condition on October 11, 2004, the date of his interview with police.

4

more susceptible to Agent DeJesus firing pointed questions until receiving the desired incriminating responses. His questionable mental condition does not automatically make his statements involuntary. *See Richardson*, 265 Fed. Appx. at 56 (discussing mental condition as consideration for totality of the circumstances). Mr. Santiago must show police knew of his questionable mental health and exploited his susceptibility with coercive police tactics. *Connelly*, 479 U.S. at 164-65 (distinguishing *Connelly* from *Blackburn v. Alabama*, 361 U.S. 199 (1960) (where police interrogated mentally ill defendant for eight to nine hours in a tiny interview room) and *Townsend v. Sain*, 372 U.S. 293 (1963) (where police injected mentally ill defendant with truth serum)). Agent DeJesus's use of repeated suggestive questions during the interrogation does not show police coercion. *Cf. Spano v. New York*, 360 U.S. 315, 322 (1959) (finding confession was coerced because Spano confessed after an eight-hour interrogation which included the leading questions of a "skillful prosecutor," eight detectives, one lieutenant, one sergeant, and one patrolman). The interview shows Mr. Santiago avoided confessing even though Agent DeJesus told him the victim would identify him as one of the kidnappers. Mr. Santiago provided some information about the other alleged kidnappers, but he never provided a full confession. Mr. Santiago's ability to evade such a confession for ninety minutes demonstrates mental acuity and his statements were voluntary. The totality of the circumstances including Mr. Santiago's signed *Miranda* card, Mr. Santiago's comfort and control throughout the interview, and non-coercive police interviewers all show his statements were voluntary.

As to his waiver, Mr. Santiago argues his language barrier and mental condition prevented him from understanding and effectively waiving his *Miranda* rights. The record, however, disproves Mr. Santiago's assertion. Agent DeJesus, an FBI-certified native Spanish speaker, translated each

5

*Miranda* right from the *Miranda* card to Mr. Santiago. After each right, Agent DeJesus asked Mr. Santiago in Spanish whether he understood each right. Mr. Santiago answered affirmatively. He was also asked whether he wanted to waive these rights and speak to Detective Whiteside and Agent DeJesus. He again answered yes and then signed his name on the card. On the tape-recorded interview, he admitted being read his *Miranda* rights and waiving them. Mr. Santiago also identified himself and gave his date of birth during the tape-recorded interview. Mr. Santiago also demonstrated he understood the questions Agent DeJesus asked him by responding he knew who the co-conspirators were, where he knew them from, and that they were in his house talking about the kidnaping. There was nothing in Mr. Santiago's conduct indicating he did not understand his rights or his waiver.

## CONCLUSIONS OF LAW

1. Mr. Santiago received and understood his *Miranda* rights because they were given to him in his native language, Spanish, and he indicated he understood these rights as set forth in the *Miranda* card he signed.

2. Mr. Santiago knowingly, intelligently, and voluntarily waived his *Miranda* rights as evidenced by his affirmation and signature on the *Miranda* card and the lack of coercive police tactics.

3. Mr. Santiago's mental condition did not render his statements involuntary because the totality of the circumstances show his statements were not a product of a particular vulnerability or police coercion.


I enter the following:

## **ORDER**

**AND NOW**, this 30th day of July, 2008, Defendant's Motion to Suppress (Document 150) is DENIED.

BY THE COURT:

/s/ Juan R. Sánchez

JUAN R. SÁNCHEZ, J.